WILLIAM J. MURPHY *vs*. CITY OF BOSTON & another.

Suffolk. April 7, 1958. — May 13, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Retirement. Pension. Municipal Corporations*, Employees.

Upon an application for retirement under G. L. c. 32, § 58, by a veteran who had been in the service of a city for thirty years as a teacher in one of its public schools and also, under separate appointments, had performed regular duties as an athletic coach at the same school for certain periods in each of many, although less than thirty, years, his "highest annual rate of compensation," to be determined as of the time of his application, was the total of both his highest annual salary rate as a teacher and the highest annual compensation payable to him as a coach at a per diem rate fixed for coaching services.

BILL IN EQUITY, filed in the Superior Court on October 18, 1957.

The suit was heard by *Warner*, J.

*Paul A. Murphy*, for the plaintiff.

*William H. Kerr*, for the defendants.

WHITTEMORE, J. This is an amended bill in equity, filed November 14, 1957, for a declaratory decree under G. L. c. 231A, in which a veteran upon applying for retirement from employment in the school department of the city of Boston asks a determination of the amount of his annual retirement pay under G. L. c. 32, § 58,[1] as amended. The

---

[1] "A veteran who has been in the service of the commonwealth, or of any county, city, town or district, for a total period of thirty years in the aggregate, shall, at his own request, with the approval of the retiring authority, be retired from active service at sixty-five per cent of the highest annual rate of compensation, including any bonuses paid in lieu of additional salary or as a temporary wage increase in addition to his regular compensation, and including any maintenance allowance, payable to him while he was holding the grade held by him at his retirement, and payable from the same source."

plaintiff has appealed to this court from the final decree adjudging the amount to be sixty-five per cent of $6,056 rather than of $7,856 as the plaintiff contends.

The plaintiff and the defendants (the city of Boston and its mayor) stipulated that the cause be determined upon the facts stated and admitted in the pleadings, as being all the material ultimate facts, so that the Superior Court and any appellate court should be at liberty to draw inferences as if the pleadings were a case stated. See G. L. (Ter. Ed.) c. 231, § 126. *Stuart* v. *Sargent,* 283 Mass. 536, 541.

The relevant facts stated and admitted in the pleadings are set forth in this and following paragraphs. The plaintiff, a veteran, on June 4, 1957, applied to the mayor of the city of Boston, as the retiring authority for the city under G. L. c. 32, § 58, for retirement from active service under that statute at sixty-five per cent of $7,856, alleging that he was then employed as "master and teacher-coach" in the Brighton High School and that the sum stated was "the highest annual rate of compensation" payable to him while he was holding the grade then held by him. The plaintiff from September, 1917, through June, 1924, served the city as a temporary teacher in the school department for a total of one hundred sixty-three days. On May 2, 1927, the plaintiff was appointed by the school committee as a teacher at the Brighton High School with the title of "junior master" effective May 1, 1927. The plaintiff has been continuously in the service of the city since that date. On May 1, 1940, he automatically became a teacher with the title of "master," and the sum of $6,056 was the highest annual rate of compensation payable to the plaintiff for his services as a master.

There were annual votes appointing the plaintiff as a coach or play teacher, for the then current school year, as follows: On November 4, 1929, as teacher-coach; on October 6, 1930, as play teacher; on November 16, 1931, as play teacher; on November 7, 1938, as teacher-coach for the portion of the school year after November 1, 1938; in

each of the months October, 1939, October, 1940, October, 1941, September, 1942, September, 1943, October, 1944, October, 1945, and September, 1946, as teacher-coach. Beginning in September, 1947, the school committee in or for each school year through 1956–1957 gave the plaintiff. three appointments as coach. The votes in the 1947–1948 school year were: September 10, 1947, as a teacher-coach for the 1947 football season; December 11, 1947, as a teacher-coach for the 1947–1948 indoor track season; March 23, 1948, as a teacher-coach for the 1948 spring baseball season. Except for a difference in the month or day of the vote, and that the 1956 appointment for the football season was as assistant teacher-coach, the votes were the same in the succeeding school years. On June 24, 1957, the plaintiff was appointed as an assistant teacher-coach for the 1957 football season. Under each of the votes the plaintiff served in the rank and for the period specified. The term school year was used to denote the period beginning on the first day of September and ending on the last day of August of the ensuing year, and the other terms were used to mean as follows: football season, a period of seventy days; indoor track season, a period of sixty days; spring baseball season, a period of seventy days.

On June 4, 1957, the highest annual compensation payable to the plaintiff for his service as teacher-coach had been $1,800, "there being two hundred days of coaching each school year and the salary schedule adopted . . . for the September 1, 1954–August 31, 1955, school year having fixed as the daily rate of compensation for a teacher-coach in a high school the sum of $9."

The mayor had not approved the application, contending that the amount at which the plaintiff was entitled to be retired is sixty-five per cent of $6,056.

We think that the decree below was in error and that the annual retirement compensation of the plaintiff under c. 32, § 58, is sixty-five per cent of $7,856.

For many years the plaintiff was in the employ of the school department doing the work of a teacher-master and

a teacher-coach at the same school. The appointment as teacher-coach required that services be rendered on more days than the total for which the statute requires that municipalities maintain schools for the instruction of all children. Chapter 71, § 1, begins, "Every town [this includes cities, c. 4, § 7, Thirty-fourth] shall maintain, for at least one hundred and sixty days in each school year . . . a sufficient number of schools . . . ." Thus substantively the duties required of the plaintiff as teacher-coach were not temporary or sporadic. Each year the plaintiff had regular duties as a teacher-coach just as he did as a teacher-master. The plaintiff's duties as teacher-coach were in performance of the city's obligation under c. 71, § 1, as were his other duties as a teacher, for that section requires instruction "in indoor and outdoor games and athletic exercise." See *School Committee of Salem* v. *Gavin,* 333 Mass. 632. We do not think it is significant that express authority to cities and towns to appropriate money for the employment of coaches and a broad specification of the power of the committee to make expenditures for "physical training and exercises, athletics, sports, games and play" are given by c. 71, § 47, while c. 71, § 38, authorizes the committee to elect and contract with teachers. Nor is it controlling against the plaintiff that the appointments as teacher-coach were for short periods.

Thus the plaintiff at the time of his retirement was performing, for the same department of the city, regular teaching work, under separate appointments, but in performance of the same general statutory mandate laid upon the city, and his regular pay included pay under both types of appointment. We think the statute intended that the base for computing his retirement be his total regular pay. In *Smith* v. *Lowell,* 334 Mass. 516, we construed c. 32, § 58, in the light of the general objective of the statute. The issue there was whether, where the regular work and regular pay of the employee who regularly worked seven days a week included "overtime" hours and "overtime" amounts under a compensation schedule based on a forty hour week, the

total regularly paid him was to be deemed his "annual rate of compensation." We held that it was "because it was payment for his customary and normal work." We said, "The term 'rate' [in c. 32, § 58] means the valuation of something based on comparison with some standard, and as used in the retirement statute is to be construed with reference to its context and the result intended to be accomplished. . . . The objective of the statute is to provide for a retired employee an annual allowance amounting to a certain percentage of the regular compensation received by him before retirement" (page 519).

In this case we must construe the clause "highest annual rate of compensation . . . payable to him while he was holding the grade held by him at his retirement." We need not determine whether the word "grade" is to be construed as "grades" in all cases (by applying the rule of construction stated in G. L. c. 4, § 6, Fourth). We think that whether the plaintiff held one grade or two on June 4, 1957, the work was so related that he was entitled to be retired from what he was doing and to have the highest annual compensation under both types of appointment stand as the base for his retirement pay. It is immaterial that he had not been a coach for thirty years. He had been in the service of the city "a total period of [more than] thirty years in the aggregate."

It does not appear whether the plaintiff received an appointment as teacher-coach for indoor track in the fall of 1957. Presumably the June, 1957, appointment for the 1957 football season expired sometime in November, 1957. The order for final decree was entered December 6, 1957, and the final decree was entered on December 26. But we think the plaintiff's rights are to be determined as of the date of the application which should have been allowed in due course thereafter in the absence of an adequate basis for not approving it. The only basis shown for not approving it being the erroneous view that only the salary as teacher-master was to be included in the retirement pay base, the plaintiff is entitled to have the application ap-

proved as it was presented, properly and in order, to the mayor.

The decree is reversed and a decree is to enter in the Superior Court in accordance with this opinion.

*So ordered with costs of this*
*appeal to the plaintiff.*