Essex County Retirement Board *vs.* Contributory
Retirement Appeal Board & another.

Suffolk.     February 7, 1961. — March 30, 1961.

Present: Wilkins, C.J., Whittemore, Cutter, & Spiegel, JJ.

*Retirement. Public Officer.*

Under G. L. c. 279, § 30, and c. 268, § 8A, the offices of selectman and of
    police officer held by a member of a county retirement system were
    vacated and forfeited upon his conviction and sentence on indictments
    for larceny, conspiracy to steal, and bribery, and he was thereby "re-
    moved" from those offices with "moral turpitude" on his part and was
    not entitled to receive a superannuation retirement allowance under
    c. 32, § 10 (1).     [323–324]
The provisions of G. L. c. 32, § 16 (2) (3), for hearing and decision by
    the local retirement board and review by the District Court upon re-
    moval or discharge of a member of a retirement system have reference
    to a removal or discharge by action of an officer or board and are in-
    applicable where the removal occurs by operation of law.     [324]
Establishment of "moral turpitude" barring a member of a retirement sys-
    tem from obtaining a superannuation retirement allowance under G. L.
    c. 32, § 10 (1), is not confined to the procedures provided in §§ 15 (1),
    16 (3).     [324–325]

Petition for review filed in the Superior Court on June
23, 1959.

The case was heard by *Thompson, J.*

Harold F. Congdon intervened.

*Bernard J. Lojko,* for the intervener.

*James T. Ronan, (John T. Ronan* with him,) for the peti-
tioner.

Whittemore, J.    The intervener, Harold F. Congdon,
has appealed from the final decree of the Superior Court,
in proceedings for review under G. L. c. 30A, which an-
nulled a decision of the Contributory Retirement Appeal
Board (the board) of May 22, 1959, and ruled that Congdon
was removed or discharged from his office with moral tur-
pitude on his part and is barred from a superannuation
retirement allowance under G. L. c. 32, § 10.

Congdon while a selectman of Salisbury and captain in the police department, in October, 1955, was found guilty on three indictments.  On the indictments for larceny and for conspiracy to steal he was sentenced to serve, and served, terms in the house of correction.  On the third indictment for bribery, "being a police officer," he was sentenced to the State prison and sentence was suspended with probation.

Congdon testified before the board that he obtained leave of absence from the police department in July, 1955, and did not run for selectman on the expiration of his term in 1956.  The board found that "[s]ubsequent to his leave of absence, he was reëmployed by the Tree and Highway Department . . . as a truck driver for three days."  Congdon was a member of the Essex County Retirement System and on August 19, 1957, he applied for retirement.  The local board on September 20, 1957, denied the application and informed Congdon he had been erroneously enrolled as a member of the system upon his reëmployment in July, 1957, as a truck driver and that his membership would be cancelled.

The controlling section of c. 32 is § 10 (1) which provides that ". . . any member who, after having attained age fifty-five, resigns, or fails of nomination or re-election, or fails to become a candidate for nomination or re-election, or fails of reappointment or is removed or discharged from his office or position without moral turpitude on his part, or any such member whose office or position is abolished, shall, upon his written application on a prescribed form filed with the board, receive a superannuation retirement allowance to become effective as provided in subdivision (3) of this section."

General Laws c. 279, § 30, provides that "If a convict sentenced by a court of the commonwealth or of the United States to imprisonment in the state prison or by a court of the United States to a federal penitentiary for a felony holds an office under the constitution or laws of the commonwealth at the time of sentence, it shall be vacated from the time of sentence. . . ."

General Laws c. 268, § 8A, provides that a "police officer who corruptly requests or accepts a gift or gratuity or a promise to make a gift or gratuity or to do an act beneficial to him, under an agreement or with an understanding that he will perform in any particular manner, or abstain from performing, any act coming within the course of his duty as such officer, or as a consideration for any work or service in connection therewith, shall forfeit his office, be forever disqualified to hold any public office, trust or appointment under the constitution or laws of the commonwealth and be punished . . . ."

It is plain that Congdon was removed from his office and position by the operation of these statutes. See *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484, 490; *Harby* v. *Los Angeles,* 64 Cal. App. 2d 911, 915; *Pauley* v. *Noeppel,* 1 Misc. 2d (N. Y.) 928, 931. It is also plain that this was with moral turpitude on his part.

Congdon's age and years of service were such that, giving regard only thereto, G. L. c. 32, § 16 (2) and (3), were in terms applicable. Section 16 (2) provides that "removal or discharge . . . shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the [local] board. . . . Unless the board shall find such removal or discharge was justified, such member shall forthwith be restored to his office or position . . . ." Section 16 (3) gives a right of review in the District Court. But these provisions have reference to removal or discharge by decision of an officer or board. Nothing in these provisions or in § 10 (1) suggests that removal from office may not occur by operation of law.

The board referred to c. 32, § 15 (1), which provides that any member charged "with the misappropriation of funds or property of any governmental unit in which or by which he is employed or was employed at the time of his retirement or termination of service, as the case may be, or of any system of which he is a member," may have a hearing, and if the local board finds the charges true the member

shall forfeit all rights "to a retirement allowance or to a return of his accumulated total deductions . . . to the extent of the amount so found to be misappropriated and to the extent of the costs of the investigation, if any, as found by the board. He shall thereupon cease to be a member, except upon such terms and conditions as the board may determine." Section 16 (3), as stated, provides a right of review by the court. We hold that these sections do not define the only way in which moral turpitude can be established for purposes of § 10 (1).

Congdon had, as he contends and as the board stressed, a preëxisting legal right acquired in part by his contributions. But in the circumstances such right relates at most to a return of his deductions or a part thereof. See c. 32, §§ 10 (4), 11 (1), 15 (3). This result is not, as Congdon contends, foreign to the spirit of c. 32 and does not read anything into the statutory provisions. It depends only on the direct reading of provisions of § 10 (1) which are consistent with the other sections and founded in sound public policy. *Kennedy* v. *Holyoke,* 312 Mass. 248, 251.

The reëmployment for three days in 1957 was inconsequential. It did not reëstablish the forfeited rights.

*Decree affirmed.*