PHILIP P. WELCH *vs.* CONTRIBUTORY RETIREMENT
APPEAL BOARD & others.[1]

Suffolk.    November 9, 1961. — January 26, 1962.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Municipal Corporations,* Officers and agents.    *Retirement.    Estoppel.
Words,* "Official."

Under an ordinance of a city with a Plan E form of government pro-
viding for a "director of public works who shall exercise the powers of
the city manager under . . . [his] direction . . . in the administration
and operation of" specified city departments and "in matters involving
public works in other departments," that the "director . . . shall be
appointed by, and may be removed by the city manager," and that the
director's appointment "shall not be subject to" civil service, the direc-
tor's office is an office "for whose administration the city manager is
responsible" within G. L. c. 43, § 105, and the director "may be re-
moved" by the city manager thereunder.    [506]
Under G. L. c. 43, § 105, and c. 32, § 16 (5), the city manager of a city
with a Plan E form of government was entitled to remove a city officer
within those statutes from office at pleasure; such removal was not sub-
ject to the provisions of c. 32, § 16 (2), even though the officer was a
member of the contributory retirement system and his age and length
of service were as specified in § 16 (2).    [505–506, 508–509, 512]
A city, by reason of having accepted payments by a city officer to its re-
tirement system, was not estopped to deny that he was entitled to the
protection of G. L. c. 32, § 16 (2).    [512]

PETITION for review, filed in the Superior Court on March
6, 1959.

The case was heard by *Spring,* J.

*Carl H. Amon, Jr.,* for the petitioner.

*Mark E. Gallagher, Jr.,* City Solicitor, for the respond-
ents.

CUTTER, J.  Welch was appointed director of public
works in Medford, effective June 6, 1954, pursuant to Med-
ford Rev. Ord. c. 41, § 1, which provides for a "director of

---

[1] Medford Contributory Retirement Board and the city of Medford.

public works who shall exercise the powers of the city manager under . . . [his] direction . . . in the administration and operation of the" highway, water and sewer, and engineering departments "and in matters involving public works in other departments." Section 2 provides that the "director . . . shall be appointed by, and may be removed by the city manager; his appointment shall not be subject to" G. L. c. 31. Medford has a Plan E charter. See G. L. c. 43, § 93 et seq., as amended.

Prior to his employment as director, Welch, a veteran of World War I, had been employed by the Commonwealth, the city of Somerville, and the town of Reading for more than twenty-nine years in employment classified as Group A under G. L. c. 32, § 3 (2) (g), as amended through St. 1954, c. 445, § 1.[2] He had been a member of the contributory retirement system within the meaning of G. L. c. 32, § 16, as amended through St. 1956, c. 422, § 1.[3]

On August 17, 1956, Welch, aged fifty-five, applied to the then city manager, one Shurtleff, for retirement, "at his own request, with the approval of the retiring authority," under G. L. c. 32, § 58 (as amended through St. 1950, c. 668, § 3) as a "veteran who has been in the [public] service . . . for a total period of thirty years in the aggregate." Shurtleff disapproved the request on September 5, 1956. No question based upon this disapproval has been argued. Cf. *Murphy* v. *Boston,* 337 Mass. 560, 564–565. Shortly thereafter Shurtleff indicated to Welch his dissatisfaction with Welch's work.

On October 31, 1956, Shurtleff asked for Welch's resignation and notified him that he would be removed on November 19 in the absence of a resignation. On November 19, 1956, Shurtleff notified the city council that Welch was to be removed from his employment, effective at midnight. On November 23, 1956, Welch resubmitted his petition for

---

[2] After November, 1956, § 3 (2) (g) was further amended, especially by St. 1958, c. 321, § 3, which, among other things, changed the name of Group A to Group 1.

[3] See amendments after 1956 by St. 1958, c. 321, §§ 19–22.

retirement to the then acting city manager. Shurtleff was then under suspension and was removed as city manager on December 11, 1956. On January 4, 1957, one Kennedy was appointed city manager. He appointed one Ellis as director. Ellis is still serving in that capacity.

On April 29, 1957, Welch wrote to the Medford contributory retirement board asking for a public hearing under G. L. c. 32, § 16 (2), as amended.[4] Related provisions of § 16[5] are described in the margin. No hearing before the Medford contributory retirement board[6] has been given to Welch. Welch has received no pay since November 19, 1956. Up to that date, he paid to the Medford contributory retirement fund the payments determined in accordance with the applicable statutes. These payments, from June

[4] General Laws c. 32, § 16 (2), as amended by St. 1951, c. 784, § 2, provides, "(2) The removal . . . of any member in service classified in . . . Group A . . . who has attained age fifty-five and has completed fifteen or more years of creditable service, or any member so classified who has not attained age fifty-five, but has completed twenty or more years of creditable service, shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board. The procedure set forth in subdivision (1) of this section relative to . . . notice, hearing if requested, and the filing of a certificate of findings and decision, so far as applicable, shall apply to all proceedings involving such removal and discharge. Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation."

[5] Section 16 (1) (a), as amended through St. 1945, c. 658, § 1, provides for furnishing to a member of a retirement system, a copy of an application by a department head for the member's involuntary retirement. The application is to include a fair summary of the facts upon which is based the applicant's opinion that the member's retirement is appropriate "together with a brief statement of the options available to such member on his retirement and . . . of his right, if any, to request a hearing with regard to such retirement and of the right, if any, of review available to him" under § 16.

Section 16 (3) (a), as amended by St. 1945, c. 658, § 1 (see later amendment, St. 1958, c. 321, § 21), gives to a member classified in Group A who has completed twenty years of creditable service and "who is aggrieved by any action . . . of a board rendered with reference to . . . his removal . . . [under] subdivision (2)" the opportunity to bring in the District Court, within the territorial jurisdiction in which he resides, a petition for review of the action. Under § 16 (4), as amended through St. 1956, c. 422, § 1, it is provided that on "matters other than those subject to review by the district court . . . [under] subdivision (3) . . . any person aggrieved by any action taken or decision of a board rendered, or by the failure of a board to act, may appeal to the contributory retirement appeal board" within periods stated in the subdivision. The appeal board is required to hold a hearing. Section 16 (5), also of importance, is discussed later in this opinion.

[6] General Laws c. 32, § 1, as amended through St. 1945, c. 658, § 1, defines "Board" as "the appropriate retirement board . . . having jurisdiction of any contributory retirement system . . . ."

6, 1954, to November 19, 1956, were accepted and added to the fund theretofore established by Welch from his earlier employment.

On June 14, 1957, Welch claimed an appeal to the contributory retirement appeal board and requested a hearing under c. 32, § 16 (4), see footnote 5, *supra*. The city filed a motion to dismiss the appeal, which was granted by the appeal board on February 2, 1959. The motion was heard on a statement of agreed facts in which the foregoing facts appeared.

Welch then filed this petition under G. L. c. 30A (the State Administrative Procedure Act) for review of the appeal board's action. A judge of the Superior Court ruled that under G. L. c. 43, §§ 104 and 105, Shurtleff "was within his rights in removing . . . [Welch] on November 19, 1956, and that his employment with . . . Medford terminated on that day." He further ruled that, if Welch's "rights were violated[,] his remedy was by a petition of review in the [D]istrict [C]ourt . . . under" G. L. c. 32, § 16 (3), see footnote 5, *supra*. Welch has appealed from a final decree dismissing the petition.

Welch contends that the provisions of c. 32, § 16, are controlling and that, accordingly, because of Shurtleff's failure to comply with § 16 (2), Welch was not removed on November 19, 1956. The other parties contend that the provisions of G. L. c. 43, §§ 104, 105, and of Medford Rev. Ord. c. 41, § 2, are to be given predominant effect.

General Laws c. 43, § 104, provides, among other things, that the city manager (under the Plan E form of municipal government, see St. 1938, c. 378) shall "supervise the administration of the affairs of the city" and that he "shall make all appointments and removals in the departments . . . and offices of the city . . . and shall perform such other duties as may be . . . required of him by ordinance." Section 105 provides in part that "[s]uch officers . . . as the city council, with the advice of the city manager, shall determine are necessary for the proper administration of the departments . . . and offices of the city for whose ad-

ministration the city manager is responsible shall be appointed, and may be removed, by the city manager."[7]

The ordinance states that the director of public works is to "exercise the powers of the city manager" with respect to certain city departments and to certain matters involving public works. This clearly is an office "for whose administration the city manager is responsible" within c. 43, § 105. In view of the provision of § 2 of the ordinance that the appointment of the director of public works shall not be subject to G. L. c. 31, we think that Welch was subject to removal at the pleasure of the city manager under c. 43, § 105, unless G. L. c. 32, § 16 (2), as amended, see footnote 4, *supra,* required that the city manager conform to the procedures set out in that section. There is no indication in the record that any official of Medford has given any notice of Welch's removal to the Medford contributory retirement board or any notice to Welch purporting to be pursuant to c. 32, § 16 (2), as amended.

In *Williams* v. *City Manager of Haverhill,* 330 Mass. 14, 17–19, we decided that a Plan D charter provision, closely resembling the Medford Plan E charter provision found in § 105, controls "the entire subject of removals of those in the service of the city," at least in respect of offices not subject to G. L. c. 31.[8] We said (p. 18), "Nowhere . . . in the charter where the power of removal is conferred upon the city manager is there . . . any indication that it is to be limited in any way except as to persons in the classified civil service." It was held that G. L. c. 39, § 8A, inserted

---

[7] Section 105 further provides, "The city manager shall report every appointment and removal made by him to the city council at the next meeting thereof . . . . All appointments by . . . the city manager, if subject to chapter thirty-one and the . . . regulations . . . under authority thereof, shall be made in accordance therewith, and all other appointments . . . shall be on the basis of . . . ability . . . ."

[8] The provisions of G. L. c. 43, § 104 and § 105 (Plan E charter), are similar to those of c. 43, § 90 and § 91 (Plan D charter), in respects here relevant. The Plan D provisions were first enacted by St. 1915, c. 267, part V, §§ 12, 13, upon the recommendation of the joint special committee on city charters, 1915 Senate Doc. No. 254, p. 26. See 1915 Senate Bills Nos. 470, 512. The Plan E charter provisions grow out of the report of the special commission on taxation and public expenditures, 1938 House Doc. No. 1710, pp. 8, 28–31. See also Hardy, Municipal Law and Practice, §§ 52, 53; note 38 B. U. L. Rev. 418, 434–436, 459–461.

by St. 1950, c. 132, § 1 (authorizing removals of council appointees for cause after public hearing) had no application to Haverhill's charter (see G. L. c. 43, § 90), under which (pp. 17–18) "full and plenary power to make . . . [certain] appointments and removals . . . ha[d] been conferred upon the city manager in order to secure effective administration of those branches for which the city manager is responsible." It was pointed out (pp. 18–19), "Nowhere is it . . . stated that the removal must be for cause . . . . The only . . . duty . . . [of] the city manager with reference to [such] removals . . . is to report them to the council. . . . He acquired a general power of removal . . . from the express terms of the . . . charter . . . ." Cf. *City Manager of Medford* v. *Civil Serv. Commn.* 329 Mass. 323, 324–329. Cf. also *Walsh* v. *Commissioners of Civil Serv.* 300 Mass. 244, 245–247; *Essex County Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 342 Mass. 322, 324.

The *Williams* case thus strongly indicates that the city manager at his pleasure could remove Welch, a key official not protected by civil service. The following considerations lead us to conclude that this power, even in respect of a long term member of a contributory retirement system, is not affected by c. 32, § 16 (2), (3), and (4).

(1) In considering the specific charter provisions of c. 43, §§ 104 and 105, together with the general provisions of c. 32, § 16, weight must be given to the principle that "strong terms are required to show a legislative intent to supersede by a general act a special act which 'may be made in regard to a place, growing out of its peculiar wants, condition, and circumstances.' City charters are essentially [such] special enactments designed to provide for the particular needs of the various cities." See *Haffner* v. *Director of Pub. Safety of Lawrence,* 329 Mass. 709, 714. See also *Williams* v. *City Manager of Haverhill,* 330 Mass. 14, 17.

(2) If c. 32, § 16 (2), operates as a limitation upon c. 43, § 105, then the local retirement board may reappraise, perhaps long after the event, whether a removal of a principal assistant by a city manager "was justified." The plain

language of § 105 seems to contemplate giving immediate effect to the removal and complete freedom of action by the city manager. Cf. *Regan* v. *Commissioner of Ins., ante,* 202, 205–206. Cf. also *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 362–363; *Cieri* v. *Commissioner of Ins., ante,* 181, 186.

Even if we were to assume that § 16 (2) has application to Welch's removal by the city manager, any review by the local board whether the removal "was justified" could not be a broad one. It would not be an examination "de novo" of the propriety of the removal. Cf. a review of a removal for specified causes, as in G. L. c. 71, § 43A (inserted by St. 1958, c. 462). Cf. also G. L. c. 71, § 42 (as amended through St. 1956, c. 132, § 2); *MacKenzie* v. *School Comm. of Ipswich,* 342 Mass. 612, 615–616. It is hard to see how any review under c. 32, § 16 (2), of a removal at pleasure under c. 43, § 105, could result in reinstatement unless, perhaps, the local board could determine that the city manager's reasons, if any, stated for removal were nothing more than gross subterfuge. Cf. *Simonian* v. *Boston Redevelopment Authy.* 342 Mass. 573, 583. The extremely narrow scope of the only conceivable review indicates that no review at all under § 16 (2) was contemplated, as we decided in *Regan* v. *Commissioner of Ins., ante,* 202, 205–206.

(3) Chapter 32, § 16 (5), as amended through St. 1945, c. 658, § 1, reads in part, "The provisions of this section [§ 16] relative to the right of any member to a hearing or to the right of review by the district court shall not apply in the case of the removal . . . of any state official or of any official of any political subdivision of the commonwealth for which provision is otherwise made in any general or special law, anything in this section to the contrary notwithstanding."[9]   Chapter 43, § 105, is a section of a gen-

---

[9] Section 16 (5) also contains the following, "Nothing contained in this section shall be construed to impair any right of any teacher under the applicable provisions of chapter seventy-one. The provisions of this section shall not apply to any member classified in Group C." The provisions now found in § 16 (5) first appeared in a 1938 amendment of a predecessor section. See G. L. c. 32, § 37C, as appearing in St. 1936 c. 318, § 3, as amended by St. 1938, c. 439, § 2 (6). See also 1938 House Docs. No. 1582, p. 71; No. 2010, p. 58.

eral law, made specifically applicable to Medford (and therefore, in a sense, the equivalent of a special law), in which a removal "provision is otherwise made." Section 16 (5), literally construed, would deprive an "official" (1) of any right to a hearing under § 16 (2) before the retirement board with respect to a removal (as distinguished from other forms of retirements, cf. *Gannon* v. *Contributory Retirement Appeal Bd.* 338 Mass. 628, 633), and also (2) of any review by the District Court under § 16 (3). See footnote 5, *supra.* Welch's position would seem to be of sufficient importance to come within the ambiguous term "official," as used in § 16 (5), which appears to be more restricted in meaning than the term "employee," which is defined in c. 32, § 1. See McQuillin, Municipal Corporations (3d ed.) §§ 12.30, 12.32, 12.35.

The possible hardship to a long term member (not protected by civil service) of a retirement system in a Plan E city, (if he is held to have no rights to a hearing and review of his removal under c. 32, § 16,) and various new contentions made in the present case, have led us to reëxamine what was very recently decided in *Regan* v. *Commissioner of Ins., ante,* 202, 205–206. There we decided that c. 32, § 16 (2), "has no application to" the removal of principal deputies and assistants of the commissioner of insurance under G. L. (Ter. Ed.) c. 26, § 7. That section provides that the "commissioner . . . may appoint and remove, with the approval of the governor and council, a first deputy" and certain other specified officials. We discuss various contentions made in Welch's behalf.

(1) It is argued that, if the Legislature had intended to exclude noncivil service appointees of a Plan E city manager from the operation of c. 32, § 16, it would have done so expressly. This has been done in effect by § 16 (5) and, in any event, in view of the *Williams* case, 330 Mass. 14, the charter provision of c. 43, § 105, is controlling rather than c. 32, § 16.

(2) It is argued that if an official like Welch can be removed under c. 43, § 105, without compliance with c. 32,

§ 16, then logic compels the conclusion that a civil service employee can be so removed without compliance with G. L. c. 31. Chapter 43, § 105, provides that "appointments by . . . the city manager, if subject to chapter thirty-one . . . shall be made in accordance therewith." This language may indicate sufficiently that, despite § 105, removals of civil service employees are to be subject to c. 31. In any event, in the light of the importance given to the protective policy of the civil service laws (see *Walsh* v. *Commissioners of Civil Serv.* 300 Mass. 244, 246), we would be slow to treat statutory provisions for the removal of officials without a hearing as depriving civil service employees of the protection afforded by G. L. c. 31 in the absence of explicit legislative language requiring such an interpretation. We think, however, that § 16 (5) has application in a case like the present one where the removal does not relate to a civil service employee. Indeed, one reason for the use of the word "official" in § 16 (5) may have been to limit the application of § 16 (5) to key officers (not under civil service) of the State and its subdivisions, leaving subject to § 16 (2) employees protected by civil service and also teachers. For the purposes of this case, we need decide no more than that § 16 (5) deprives an official without civil service protection, when removed under c. 43, § 105, of the benefits of a hearing, and review by the District Court, in accordance with § 16.

(3) It is suggested that the hearing and District Court review, provided in § 16 (2) and § 16 (3), respectively, are the only features of § 16 which § 16 (5) makes inapplicable to removals under c. 43, § 105. It is then contended (a) that, under § 16 (2), the city manager must still submit to the local retirement board a fair summary of the facts upon which removal is based, and (b) that, upon the basis of this summary, the local board must determine whether the removal was "justified," even if it be assumed that § 16 (5) precludes any hearing at the request of the removed official and prevents the board from disputing the facts stated by the city manager as the basis of his action. This is too

narrow a view of the effect of § 16 (5) which we construe as excluding removals under § 105 from the scope of § 16. The provisions in § 16 (2) for notice to the board, and the related provisions of § 16 (1), seem to us to relate only to the hearing before the local board, where one is permitted as in the case of an involuntary retirement, and to any subsequent review by the District Court. To such a hearing and review, by the specific terms of § 16 (5), an official removed under c. 43, § 105, is not entitled.

(4) It is argued that, if § 16 (2) does not apply to removals under c. 43, § 105, then a long term system member may be deprived of benefits under c. 32, § 10, payable upon his removal, because of his inability to establish, in the absence of a statement under § 16 (2) by the city manager of the grounds of removal, that the removal is not based upon "moral turpitude." No suggestion could be made on the facts of this case that Welch was removed for moral turpitude. We thus now have no occasion to consider how the presence or absence of "moral turpitude" for the purposes of § 10 can be established by a removed retirement fund member to whom § 16 (2) is not applicable, or whether § 16 (2) and § 16 (3) "define the only way in which . . . [it] can be established." See *Essex County Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 342 Mass. 322, 324–325.

(5) It is argued that our decision in *Duncan* v. *School Comm. of Springfield,* 331 Mass. 738, requires us to hold that § 16 (2) is applicable to Welch's removal. In the *Duncan* case, and in *O'Day* v. *School Comm. of West Brookfield, ante,* 122, it was assumed (in cases which arose prior to the enactment of G. L. c. 71, § 43A, by St. 1958, c. 462) that § 16 (2) would be applicable in the event of the dismissal of a teacher under G. L. c. 71, §§ 41 and 42, as then in effect, which gave to school committees broad powers to dismiss teachers for reasons specified in the statute. At least two answers can be made to this suggestion. (a) Chapter 32, § 16 (5), makes § 16 as a whole inapplicable only to removals "of any *official* of any political subdivision . . .

for which provision is otherwise made" (emphasis supplied). Section 16 (5) also provides that nothing in § 16 shall "impair any right of any *teacher*" (emphasis supplied) under c. 71. There is thus some differentiation in § 16 (5) between an "official" and a "teacher" which suggests that § 16 (5) does not exclude teachers from the application of § 16. (b) The dismissal of a teacher upon a ground stated in c. 71, § 42, presents a substantive issue (viz., whether the ground in fact exists) reasonably adapted to an independent review. On the other hand, under the unrestricted power of removal given by c. 43, § 105, there is no substantial issue appropriate for independent review.

(6) It is argued that Medford is estopped to deny that Welch is entitled to the protection of § 16 because Medford accepted payments by Welch to the Medford contributory retirement fund from June 6, 1954, to November 19, 1956. These payments gave Welch some advantages. In the event of involuntary retirement under § 16 (1), or of a voluntary retirement under c. 32, § 5, or of a retirement for disability (see §§ 6, 7), Welch would have received benefits from his membership. He may make also claim for benefits under c. 32, § 10, based upon his removal. We think that Medford is not estopped to deny that Welch had benefits and rights under §§ 16 (2), (3), and (4), which c. 32 does not in fact give him. See the somewhat analogous question discussed in *Collins* v. *Boston,* 338 Mass. 704, 709, and *Weiner* v. *Boston,* 342 Mass. 67, 70.

We follow the *Regan* case and hold that Welch's removal was not subject to the provisions of c. 32, § 16 (2).

*Decree affirmed.*