CECILY HASKELL vs. SCHOOL COMMITTEE OF FRAMINGHAM.

Middlesex. December 19, 1983. — March 16, 1984.

Present: BROWN, CUTTER, & SMITH , JJ.

*School and School Committee,* Termination of employment.

A school committee's actions in eliminating a teacher's position for budgetary reasons, and in thereafter terminating her employment, accomplished her separation from the school system for ''good cause'' within the meaning of G. L. c. 71, § 42. [630-631]

A teacher who was dismissed by a school committee for budgetary reasons, and who sought judicial review under G. L. c. 71, § 43A, was deemed to have relinquished whatever administrative review rights she may have had under the older provisions of G. L. c. 32, § 16 (2), and, consequently, she could not prevail on her contention that the committee's failure to notify the Teachers' Retirement Board as required by G. L. c. 32, § 16 (2), prevented her dismissal from taking effect. [631-634]

CIVIL ACTION commenced in the Superior Court Department on November 6, 1979.

The case was heard by *Mullaney, J.,* a District Court judge sitting under statutory authority.

*Michael A. Feinberg* for the plaintiff.

*Peter D. Stanton* for the defendant.

*Americo A. Salini, Jr.,* for Massachusetts Teachers Association, amicus curiae, submitted a brief.

CUTTER, J. Miss Haskell was first employed by this school committee in September, 1968, as a middle school typing teacher (business education) and in October, 1979, was serving at discretion (i.e., she had tenure). G. L. c. 71, § 41. She had been in Framingham for eleven years and, in other school systems, for a long enough additional period to have made her by 1979 a contributing member of the teachers' retirement fund for more than twenty years.[1]

---

[1] This fact seems to be accepted despite the absence of appropriate findings by the trial judge in the Superior Court on the subject.

In August, 1979, the Framingham superintendent of schools (Dr. Benson) notified Miss Haskell by letter that at a school committee meeting on October 9, 1979, he intended "to recommend to the [s]chool [c]ommittee that . . .[she] be terminated due to the elimination of the teaching position . . . [she] filled." At that meeting Miss Haskell was represented by counsel. Dr. Benson stated to the meeting that the termination resulted from an earlier decision of the committee in December, 1978, to discontinue the eighth grade typing program, which would eliminate four positions, of which Miss Haskell held one. The minutes of the October 9 meeting reveal (1) that, at the next prior budget session about $1,300,000 had been cut from the town's school department budget, of which about $50,00 was as a result of the elimination of grade 8 typing, and (2) that Dr. Benson stated he and his staff had considered whether Miss Haskell should be transferred to do high school commercial teaching and it was their unanimous opinion that Miss Haskell had not had the training in the last ten years which would enable her to displace an already tenured person teaching in the high school.

Dr. Benson's recommendation was accepted by a five to one vote (with one member absent), more than a two-thirds vote of the whole committee. See appendix to this opinion (Appendix) G. L. c. 71, § 42, at point [A]. He, on October 12, 1979, gave Miss Haskell notice of the termination of her employment as of October 31, 1979, "due to the elimination of the position you filled." The letter stated that the "action in no way reflects on . . . [her] performance" and that she was most welcome to apply for any vacancy which might occur in her field.

On November 6, 1979, Miss Haskell filed in the Superior Court this complaint against the school committee, purporting to proceed under G. L. c. 71, § 43A, as amended by St. 1977, c. 671, to obtain a de novo hearing to set aside her dismissal, first, on the ground that "it was arbitrary, capricious, and not in accordance with . . . G. L. c. 71, § 42," and, second, seeking declaratory relief or relief in the nature of mandamus, based on the alleged invalidity of the dismissal because the school committee had "not filed with the teachers' retirement board, . . .

[see G. L. c. 32, § 16(2), quoted in the Appendix, at point [E] in part 3(a)], a written notice that'' Miss Haskell, a member of the teachers' retirement system, had been dismissed.

The case was heard de novo in the Superior Court by a District Court judge sitting by statutory authority. He found that the school committee ''complied with the procedural requirements of'' G. L. c. 71, § 42 (see Appendix, part 1, especially at point [B]), and that the dismissal was for ''good cause.'' He also found that Miss Haskell was ''neither discharged [n]or removed, but rather [was] on a leave of absence, in a nonpaid status with an important right of recall.'' This right, the trial judge apparently thought, was contained in the collective bargaining agreement[2] then in force.

Upon this appeal from the judgment dismissing the complaint (on November 1, 1982), the case has been presented on the issue whether, after a dismissal under G. L. c. 71, § 42, for budgetary reasons from which an appeal has been taken under c. 71, § 43A (see Appendix to this opinion, part 2), failure to give notice to the Teachers' Retirement Board, see G. L. c. 32, § 16(2), invalidates the dismissal.[3]

1. The action of the school committee in December, 1978, eliminating funding for Miss Haskell's position, and on Oc-

[2] The collective bargaining agreement (art. X) provided generally that, in the event of a reduction in force, all affected teachers would be eligible to apply for recall to fill any vacancy, if still on a recall list which was to be maintained for two years after the date of layoff. Cf. *Gannon* v. *Contributory Retirement Appeal Bd.,* 338 Mass. 628, 630-631 (1959). Under art. X, ''teachers recalled shall be considered to have been on a non-paid leave of absence for the term of the layoff.'' Recall of a teacher to fill a vacancy was to be made by the school committee upon nomination of the superintendent, who could not hire any new employee until every eligible person on the recall list had been given opportunity to apply. If the superintendent should find that no person on the recall list was qualified to fill the vacancy and nominate a person not on the list, the Framingham Teachers Association was to ''have the right to grieve'' the appointment under a complicated grievance procedure (art. III).

[3] Following the arguments, opportunity to file briefs as amici curiae was given to the Massachusetts Teachers Association, which filed a brief, and to the Attorney General, in his capacity as counsel for the Civil Service Commission and for the Contributory Retirement Appeal Board. The Attorney General filed no brief.

tober 9, 1979, terminating Miss Haskell's employment with the Framingham schools, was a complete separation for "good cause" from the service of the schools. See *Nutter* v. *School Committee of Lowell*, 5 Mass. App. Ct. 77, 81 (1977). See also *Setterlund* v. *Groton-Dunstable Reg. School Comm.*, 382 Mass. 328, 331-332 (1981). Compare *Black* v. *School Committee of Malden*, 365 Mass. 197, 203-205, 213 (1974). The recall provisions of the collective bargaining agreement (see note 2, *supra*) do not indicate such a definite likelihood of reemployment as should affect a decision about the date of Miss Haskell's separation from the school service. It has not been shown, in any event, that she was recalled during her two years on the recall list. See note 2, *supra*. See *Clark* v. *Mt. Greylock Reg. School Dist.*, 3 Mass. App. Ct. 549, 551-553 (1975).

2. It seems to be now recognized that the abolition of the middle school typing positions was a matter of budget economy. In *Boston Teachers Local 66* v. *School Committee of Boston*, 386 Mass. 197, 216 (1982, hereafter "the 1982 B.T.U. case") it was held that the notice and hearing requirements of c. 71, § 42, do not apply to dismissals of tenured teachers "solely because of budgetary considerations provided, of course, that such reasons are not proffered by the school committee as a sham or subterfuge." Miss Haskell was afforded a hearing which complied with § 42, as the trial judge found.

From the school committee's action, Miss Haskell seasonably claimed an appeal under G. L. c. 71, § 43A, originally inserted by St. 1958, c. 462.[4] Prior to the 1958 statute, an inde-

---

[4] Statute 1958, c. 462, grew out of 1958 House 1600, a petition by the Massachusetts Federation of Teachers, AFL-CIO. As introduced, the bill contained a section 2 which read: "Any teacher . . . referred to in section one of this act who has satisfied the requirement for the minimum period of creditable service under . . . [G. L. c. 32, § 16 (2)] may elect to avail himself of either the remedies provided for in said section sixteen or of the remedy provided for in said section one of this act." On April 22, 1958, Senate Bill 683, which contained no section 2, was substituted for House 1600, and was enacted without change. No legislative history has come to our attention which sheds light on the reasons for the omission of § 2 of 1958 House 1600. In the face of the provision by what is now c. 71, § 43A, of a complete method of statutory review of action under § 42, section 2 may have been regarded as unnecesssary, especially in view of the provision of c. 32, § 16(5), quoted below in the Appendix, part 3(b).

pendent review of her dismissal could have been obtained under G. L. c. 32, § 16(2), and we assume that a written notice under § 16(2), see Appendix to this opinion part 3(a) at point [E], then would have been a necessary condition precedent to such a review. See *Duncan* v. *School Comm. of Springfield,* 331 Mass. 738, 740-741 (1954); *O'Day* v. *School Comm. of West Brookfield,* 343 Mass. 122, 123 (1961). See also *Welch* v. *Contributory Retirement Appeal Bd.,* 343 Mass. 502, 511-512 (1962). The 1958 statute plainly was designed to give a more expeditious, independent, de novo review by the courts of an allegedly wrongful teacher's dismissal. See *Springgate* v. *School Committee of Mattapoisett,* 11 Mass. App. Ct. 304 (1981).

Miss Haskell contends that the explicit language of G. L. c. 32, § 16(2), see Appendix, part 3(a) at point [E], to the effect that the discharge of a teacher ''shall not become effective . . . until a written notice thereof'' is filed with the teachers' retirement board, prevented her discharge by the school committee from becoming effective so that she is entitled to reinstatement with full pay from the date of her purported discharge. She relies on *Chartrand* v. *Registrar of Motor Vehicles,* 347 Mass. 470, 472, 476 (1964), which dealt not with a teacher, but with an employee of the Registry of Motor Vehicles, who had been dismissed on charges ''that he had improperly licensed five applicants.'' The provisions of c. 71, §§ 41, 42, and 43A, dealing with teachers, were not discussed. Compare *Welch* v. *Contributory Retirement Appeal Bd.,* 343 Mass. at 511-512, where the brief, peripheral discussion of these sections of c. 71 is not decisive of the present question.[5]

---

[5] It should be noted that, at 512, the *Welch* case suggests that the ''dismissal of a teacher upon a ground stated in c. 71, § 42, presents a substantive issue (viz., whether the ground in fact exists) reasonably adapted to an independent review,'' and distinguishes ''the unrestricted power of removal,'' given under the separate statute then under consideration. In the present case, Miss Haskell was discharged for purely budgetary reasons, and the 1982 B.T.U. case makes it clear that such a discharge (absent a ''sham or subterfuge'') in effect presents (see the *Welch* case, 343 Mass. at 512) ''no substantial issue appropriate for independent review.'' Certainly, such a dismissal ordinarily should not present ground for *two* separate types of review by *different*

It is obvious that, in the course of legislative revision, over the years, of two separate, comprehensive regulatory schemes (cc. 31 and 32, civil service, and c. 71, schools), confusing and somewhat conflicting statutory sets of remedies have developed, probably as a consequence of wholly understandable oversight. We must reconcile them as well as we can.

Even if the older form of review under c. 32, § 16(2), now survives at all for teachers who can obtain review under c. 71, § 43A, it seems unlikely that the Legislature intended in 1958 to permit two successive or simultaneous forms of review of action under c. 71, § 42. When a discharged teacher seeks review under c. 71, § 43A, it would seem to be the probable purpose to give effect to the provisions of § 42 (see the language following point [C] in the Appendix, part 1), and of § 43A (Appendix, part 2, at point [D]), rather than the remedy under c. 32, § 16(2), see Appendix, part 3(a) at point (E). At most the two remedies, designed to accomplish the same objective, should be regarded as alternative. See *Bergeron* v. *Superintendent, Walter E. Fernald State School,* 353 Mass. 331, 333 (1967). By invoking one remedy, Miss Haskell should be deemed to have relinquished the other, particularly in a case, where under the 1982 B.T.U. case her removal under c. 71, § 42, was for budgetary ''good cause'' (see Appendix, part 1, at point [B]) rather than for disciplinary reasons. There was, after the 1958 statute, no discernible special social policy or labor policy for granting more than one remedy in circumstances like those before us. Compare *Dedham* v. *Labor Rel. Commn.,* 365 Mass. 392, 400-406 (1974), where occasion arose to reconcile old procedures under civil service with new statutory provisions for collective

bodies. Although Miss Haskell's discharge took place before the adoption of Proposition 2 ½ (see St. 1980, c. 580, as amended by St. 1981, c. 782), some weight must be given to the circumstance that Miss Haskell's contention, if accepted, would tend to frustrate the school committee's effort to effect reasonable economies, purely because of what may have been an inadvertent failure to comply precisely with c. 32, § (16)(2).

bargaining with municipal employees. We treat the present case as controlled by the provisions of c. 71, § 43A, and the 1982 B.T.U. case.

*Judgment affirmed.*

APPENDIX.

[Note: The letters in brackets have been inserted to permit convenient reference to the language immediately following the bracketed letters, respectively.]

Pertinent statutory provisions include:
1. *General Laws c. 71, § 42,* as amended through St. 1972, c. 464, § 2, which reads in part:

"The school committee may dismiss any teacher but [A] no teacher . . . shall be dismissed unless by a two thirds vote of the whole committee . . . . In every such town a teacher . . . employed at discretion under section forty-one . . . shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . . , insubordination [B] or other good cause, nor unless at least thirty days, exclusive of customary vacation periods, prior to the meeting at which the vote is to be taken, he shall have been notified of such intended vote; nor unless, if he so requests, he shall have been furnished by the committee with a written charge or charges of the cause or causes for which his dismissal is proposed; nor unless, if he so requests, he has been given a hearing before the school committee . . . at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and examine them; nor unless the charge or charges shall have been substantiated; nor unless, in the case of a teacher, the superintendent shall have given the committee his recommendations thereon . . . . In case a decrease in the number of pupils in the schools of a town renders advisable the dismissal of one or more teachers, a teacher who is serving at the discretion of a school committee under section forty-one shall not be dismissed if there is a teacher not serving at discretion whose position the teacher serving at discretion is qualified to fill. [C] No teacher . . . who has been lawfully dismissed shall receive compensation for services rendered thereafter."

2. *General Laws c. 71, § 43A,* as amended by St. 1977, c. 671, which reads in part: "Any teacher . . . employed at discretion . . . who had been dismissed . . . from a position by vote of a school committee under the provisions of section forty-two . . . may, within thirty days after such vote appeal therefrom to the superior court in the county in which the person was . . . employed.

"The court shall advance the appeal for a speedy hearing and . . . shall hear the cause de novo, review such action, and determine whether . . . upon all the evidence such action was justifiable. [D] If the court finds such action was justifiable, the action of the school committee shall be affirmed; otherwise, it shall be reversed and the appellant shall be reinstated to the position

without loss of compensation. The decision of the court shall be final, except as to matters of law.''

3(a). *General Laws c. 32, § 16(2)*, as amended through St. 1967, c. 826, § 22, which reads in part: ''The removal or discharge of any member in service classified in Group 1 . . . who has not attained age fifty-five but who has completed twenty or more years of creditable service . . . [E] shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board . . . . [The ''board'' under c. 32, § 1 and § 20(2) is the Teachers' Retirement Board established under G. L. c. 15, § 16.] Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his . . . position without loss of compensation.''

(b). *General Laws c. 32, § 16(5)*, as amended by St. 1958, c. 321, § 22, which reads in part: ''Nothing contained in this section shall be construed to impair any right of any teacher under the applicable provisions of [G. L.] chapter seventy-one.''