SCHOOL COMMITTEE OF BROCKTON *vs.* TEACHERS'
RETIREMENT BOARD & another.[1]

Suffolk.    September 10, 1984. — November 8, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*School and School Committee,* Dismissal of tenured personnel.  *Statute,*
Construction.  *Teachers' Retirement Board.  Practice, Civil,* Dismissed
school teacher's appeal.

Discussion of the respective roles of local school committees and the
Teachers' Retirement Board with regard to the dismissal of teachers.
[260-261]
General Laws c. 71, § 43A, which permits a tenured teacher who has been
dismissed to appeal the dismissal directly to the Superior Court, did not
implicitly repeal G. L. c. 32, § 16, which empowers the Teachers'
Retirement Board to review teacher dismissals. [261-262]
The Teachers' Retirement Board exceeded its authority under G. L. c. 32,
§ 16, by setting aside a school committee's dismissal of a tenured teacher
following its de novo review of the school committee's action, and the
board, on remand, was to uphold the decision of the school committee
unless the dismissal was arbitrary or irrational. [262-265]

CIVIL ACTION commenced in the Superior Court Department
on March 24, 1982.

The case was heard by *George W. Cashman,* J., sitting
under statutory authority.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*Richard W. Murphy (J. Michael Conley* with him) for the
plaintiff.

*H. Reed Witherby,* Assistant Attorney General, for Teachers'
Retirement Board.

---

[1] Nicholas C. Palumbo.

*Mark G. Kaplan* for Nicholas C. Palumbo.

HENNESSEY, C.J. The school committee of Brockton (committee) has appealed from a judgment of the Superior Court, which upheld the determination of the Teachers' Retirement Board (board) that the dismissal of the defendant Palumbo was unjustified, and that he must be reinstated with back pay. This appeal concerns the statutory authority of the board and its scope of review of teacher dismissals under G. L. c. 32, § 16.

Palumbo was hired by the committee for the school year beginning in the fall of 1966. From 1966 until 1979, he served as a social studies teacher at North Junior High School, having attained tenure in 1969.[2] In 1979, Palumbo received poor evaluations of his teaching methods. He felt that these evaluations were unfair, and filed a number of grievances. These were ultimately settled, the parties agreeing that Palumbo would be transferred to South Junior High School, and that there he would be reevaluated by the principal, Wayne Lucier, and the head of the social studies department, Donald Jones.

In the 1979-1980 school year, Palumbo's classroom performance at South Junior High School was evaluated on five separate occasions by either Lucier or Jones. The evaluations were unfavorable, and the two men recommended that Palumbo not be rehired. Both the administrative assistant for personnel and the assistant superintendent reviewed the evaluations and concurred with the recommendations of Lucier and Jones. In April, 1980, Palumbo was notified by the superintendent of schools that a meeting of the committee would take place to consider his dismissal.[3]

---

[2] See G. L. c. 71, § 41.

[3] According to a subsequent letter from the superintendent to Palumbo, his teaching was incompetent because of: "1. Lack of control over, and rapport with, your students on a consistent, day-to-day basis; and/or 2. Failure to meet objectives of lesson plans on a consistent basis; and/or 3. Failure to implement effectively the suggestions of the department chairman for teaching your subject matter and thereby failing to improve your teaching methods; and/or 4. Inability to deal with students at their different levels of understanding; and/or 5. Failure to demonstrate effective instructional techniques; and/or 6. Inability to communicate information to students in an effective, accurate and understandable manner."

Palumbo requested a hearing before the committee,[4] which took place, after a number of postponements, on several evenings in late 1980. On December 1, 1980, the committee voted unanimously to dismiss Palumbo.

As "a veteran . . . [who] has completed ten or more years of creditable service," G. L. c. 32, § 16 (2), Palumbo was entitled to, and requested, a hearing before the board to determine whether his removal was justified.[5] The hearing was held on three days in January and February, 1981. As later reported in the decision of the board, this hearing "was de novo in nature." Furthermore, the testimony "presented by the parties during this hearing was lengthy, complex and, at times, in complete conflict." Nonetheless, the board did recognize that

---

[4] General Laws c. 71, § 42, as amended through St. 1972, c. 464, § 2, provides that: "In every such town a teacher . . . employed at discretion under section forty-one . . . shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . . , insubordination or other good cause, nor unless at least thirty days, exclusive of customary vacation periods, prior to the meeting at which the vote is to be taken, he shall have been notified of such intended vote; nor unless, if he so requests, he shall have been furnished by the committee with a written charge or charges of the cause or causes for which his dismissal is proposed; nor unless, if he so requests, he has been given a hearing before the school committee which may be either public or private at the discretion of the school committee and at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and examine them; nor unless the charge or charges shall have been substantiated; nor unless, in the case of a teacher, the superintendent shall have given the committee his recommendations thereon."

[5] General Laws c. 32, § 16 (2), as appearing in St. 1982, c. 630, § 21, provides: "The removal or discharge of any member in service classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and has completed fifteen or more years of creditable service, or any member so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, or any such member who is a veteran and has completed ten or more years of creditable service, shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board. The procedure set forth in subdivision (1) relative to delivery of copies, statement of service thereof, notice, hearing if requested, and the filing of a certificate of findings and decision, so far as applicable, shall apply to all proceedings involving such removal or discharge. Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation."

"serious allegations of incompetence resting on observations of disjointed and confusing presentations of material, inability to stimulate and involve students in class activities, lack of control and discipline in the classroom, and an inability to effectively communicate with his classes . . . were only rebutted directly by the testimony of Mr. Palumbo himself."

The board then chose to evaluate these "serious allegations of incompetence" solely in light of four "objective criteria" which it had applied "[i]n cases of this nature."[6] On the basis of these criteria, and in particular on the ground "that no evidence was presented which tended to show that Mr. Palumbo's classes were in any way less well educated and prepared than any other eighth-grade students," the board concluded that Palumbo's dismissal was unjustified, and it ordered his reinstatement with back pay.

The school committee then filed a petition for a review of the decision in the Superior Court, under G. L. c. 30A, § 14. The trial judge, despite the recommendation of a special master, upheld the decision of the board, finding that the decision "was supported by substantial evidence." The school committee appealed from the judgment of the Superior Court, and we ordered the matter to be transferred to this court. G. L. c. 211A, § 12.

The school committee challenges, inter alia, the authority of the board to conduct a de novo review, as well as its authority to interpret restrictively, in light of its four "objective criteria," the committee's allegations of incompetence.[7] We conclude

---

[6] Specifically, the board felt that whether a teacher could be discharged for incompetence should hinge on the following four issues: "(1) Did the School Committee receive larger than normal numbers of parental or student complaints relative to Mr. Palumbo's teaching ability? (2) Did the School Committee corroborate its assertion by establishing that Mr. Palumbo's students, upon leaving his classes, were less familiar with the year's materials than other similarly-situated eighth-grade students? (3) Did the School Committee provide any corroboration from any source other than the two evaluators in support of their allegations? (4) Were good faith efforts made at remediation of Mr. Palumbo's problems, as they were perceived by the evaluators?"

[7] The committee has also raised a variety of constitutional challenges to the board's exercise of its power to review teacher dismissals, but in light of our interpretation of G. L. c. 32, § 16, we need not reach these issues. See *Commonwealth* v. *Joyce*, 382 Mass. 222, 226 n.5 (1981).

that the board has, in this case, exceeded its statutory authority, both with respect to the procedure and also the standards it employed in reversing the school committee.

1. *Legislative Intent as to Decisions on Educational Policy.*

We agree with the statement in *Haskell* v. *School Comm. of Framingham,* 17 Mass. App. Ct. 628, 633 (1984), that the statutory protections enacted for the benefit of dismissed teachers are "confusing and somewhat conflicting," and that it is our task to "reconcile them as well as we can." The appropriate starting point is an analysis of the respective roles of local school committees and the board with regard to certain matters of educational policy, such as the employment of teachers.

This court said in *MacKenzie* v. *School Comm. of Ipswich,* 342 Mass. 612, 615 (1961), that the power of the school committee is "paramount" with respect to "the employment and discharge of teachers." In *Moran* v. *School Comm. of Littleton,* 317 Mass. 591, 592 (1945), we noted that "[t]he responsibility for the removal of a teacher who is incompetent . . . rests exclusively with the committee." Moreover, statutes such as those at issue here "do not limit the power conferred upon the committee" but merely "restrict the manner of its exercise." *Id.* at 593. See *School Dist. No. 10 in Uxbridge* v. *Mowry,* 9 Allen 94, 97 (1864) ("[t]he legislature intended to confide to the school committee the determination of the fitness of the teacher for his position and his work").

The independence which should be afforded local school committees is reflected throughout the legislative scheme regulating the manner in which teachers are hired and discharged. See G. L. c. 71, § 38 (school committee "shall elect and contract with the teachers of the public schools, shall require full and satisfactory evidence of their moral character, and shall ascertain their qualifications for teaching and their capacity for the government of schools"); G. L. c. 71, § 41 ("[e]very school committee, in electing a teacher who has served in its public schools for the three previous consecutive school years, shall employ him to serve at its discretion"); G. L. c. 71, § 42 ("[t]he school committee may dismiss any teacher . . . . [A]

teacher . . . employed at discretion under section forty-one
. . . shall not be dismissed, except for inefficiency, incapacity,
conduct unbecoming a teacher . . . , insubordination or other
good cause").

In light of this statutory scheme, it is inconceivable that the
Legislature could have intended to invest the board with plenary
powers to review and reverse the personnel decisions of local
school committees according to the board's own particular
view of what constitutes teacher competence. Instead, the
Legislature established the board "for the purpose of adminis-
tering the teachers' retirement system." G. L. c. 15, § 16. In
*Bianchi* v. *Retirement Bd. of Somerville,* 359 Mass. 642, 647
(1971), we recognized that "General Laws c. 32 represents an
attempt to collect in one chapter most of the statutes regulating
a large number and variety of separate and distinct contributory
and non-contributory retirement and pension systems for public
employees." Nowhere is there any suggestion that the Legisla-
ture intended to empower the board to dictate basic matters of
educational policy.[8]

2. *Implied Repeal.*

The school committee argues that G. L. c. 71, § 43A, which
provides that a tenured teacher who has been dismissed can
appeal directly to the Superior Court, implicitly repealed G. L.
c. 32, § 16, which empowers the board to review teacher dis-
missals. We disagree. Assuming the requirements of both stat-
utes are met, a dismissed teacher could pursue either or both
of the avenues of appeal open to him. "We will find an implied
repeal of one statute by another only when 'the prior statute
is so repugnant to, and inconsistent with, the later enactment,

---

[8] In an analogous line of cases, we considered whether G. L. c. 150E,
§ 8, authorizing school teachers to arbitrate grievances, expressed a legis-
lative "intent to permit a school committee to bargain away its traditional
authority to make tenure decisions if it so wishes." *School Comm. of Danvers*
v. *Tyman,* 372 Mass. 106, 112-113 (1977) (footnote omitted). We held
that it did not. "Whenever the Legislature has limited the powers of school
committees, it has done so in express terms, and it is expected that a radical
departure from prior policy would be clearly indicated, and not left to
doubtful implication." *Id.* at 113. See, e.g., *Dennis-Yarmouth Regional
School Comm.* v. *Dennis Teachers Ass'n.,* 372 Mass. 116, 120 (1977).

that both cannot stand.'" *Boston* v. *Board of Educ.,* 392 Mass. 788, 792 (1984), quoting *Commonwealth* v. *Graham,* 388 Mass. 115, 125 (1983).[9]

3. *Authority to Conduct a de Novo Review.*

As required by G. L. c. 32, § 16 (2), Palumbo's termination could not become final "unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board. The procedure set forth in subdivision (1) relative to . . . hearing if requested, . . . shall apply to all proceedings involving such removal or discharge." Subdivision (1) (*b*) of that section provides that "[t]he board . . . shall conduct such hearing in such manner and at such time or times as the best interests of all parties concerned may require."

Nowhere in G. L. c. 32, § 16, is any express provision made for de novo review. In fact, for this court to infer that de novo review is authorized by § 16 would render the "fair summary of the facts" which the committee is required to file with the board wholly superfluous. The Legislature could not have intended that the committee be required to present a "fair summary of the facts" upon which the dismissal is based, and also that the board create its own factual record de novo.[10] Because "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous," 2A C. Sands, Sutherland Statutory Construction § 46.06 (4th ed. 1973), we decline to read a provision for de novo review into § 16 (2).

Moreover, it is apparent that the Legislature knows how to specify de novo review when it intends to provide for one. The Legislature, by amendment to G. L. c. 71, § 43A, authorized the Superior Court to hear appeals from teacher dis-

---

[9] In this case, Palumbo has also appealed to the Superior Court under G. L. c. 71, § 43A, and that action has been held in abeyance pending resolution of this appeal.

[10] In order to ensure that the "summary of the facts" prepared by the school committee is, in fact, "fair," the committee, upon request for a hearing before the board, shall also make available a record of all proceedings before the committee.

missals "de novo." The omission of such a term from G. L. c. 32, § 16, suggests that the Legislature did not intend the board to engage in its own fact-finding process. "[W]here the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present." *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982). See also 2A C. Sands, Sutherland Statutory Construction § 51.02 (4th ed. 1973).[11]

4. *Applicability of G. L. c. 32, § 20 (5) (b), to Teacher Dismissals.*

The board argues that G. L. c. 32, § 20 (5) (*b*), applies to appeals from teacher dismissals under § 16 (2). According to § 20 (5) (*b*), as amended by St. 1956, c. 422, § 2, "The head of any department upon request from the board shall promptly furnish it with such information as shall be required to effectuate the provisions of sections one to twenty-eight inclusive. Any such board shall have the power to take evidence, subpoena witnesses, administer oaths and examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute." We disagree that this permits a de novo hearing under § 16 (2). First of all, the explicit limitations on the board's scope of review of dismissals under § 16 (2), control over the more general provisions of G. L. c. 32, § 20 (5) (*b*). See 2A C. Sands, Sutherland Statutory Construction, *supra* at § 46.05. Moreover, § 20 (5) (*b*) empowers the board to take evidence only on "questions in dispute." The question in dispute under § 16 (2) is whether, upon a review of the "fair summary of the facts" presented by the committee, the dismissal is justified. Since no evidence would be relevant to this issue other

---

[11] In *Sullivan* v. *Municipal Court of the Roxbury Dist.*, 322 Mass. 566, 572 (1948), this court held that, under G. L. c. 31, § 43 (*b*), as then in effect, a hearing before the Civil Service Commission requested by a discharged employee is "a hearing de novo upon all material evidence." The court emphasized that the statute at issue set forth "no limitation of the evidence to that which was before the appointing officer." *Id.* We find *Sullivan* inapposite, since G. L. c. 32, § 16, does suggest that review by the board is limited to the "summary of the facts" which the committee is required to file, and to the record of the proceedings before the committee so that the board may ensure that the summary is, in fact, "fair."

than the "summary of the facts" which the committee is required to provide, as well as the record before the committee, § 20 (5) (b) does not empower the board to conduct any further factual inquiry in a § 16 (2) appeal. Cf. *Welch* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 502, 507-508 (1962) (de novo review would not be appropriate under § 16 [2] where, because of city manager's unrestricted power of removal, there was no issue appropriate for independent review).

5. *The Appropriate Standard to Be Applied by the Board.*

Because the agency decision was based upon de novo review, it was "made upon unlawful procedure," G. L. c. 30A, § 14 (7) (d), and therefore, the Superior Court judge erred in affirming the decision of the board. The only remaining issue is the appropriate standard of review which the board, on remand, should apply to the decision of the school committee.

According to § 16 (2), "Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation." In this context, we conclude that a dismissal is "justified" if it is based on "any ground which is not arbitrary, irrational, unreasonable, in bad faith, or irrelevant to the committee's task of running a sound school system." *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 308 (1981). Cf. *Welch* v. *Contributory Retirement Appeal Bd.,* *supra* ("justified" in context of city manager's power to remove at pleasure, would mean merely that reasons given were "more than gross subterfuge"). We do not believe that the board has any authority to develop its own criteria for independently assessing teacher competence. Instead, given the autonomy which is traditionally afforded school committees in setting educational policy, the decision of the school committee is to be upheld if the record before the board demonstrates that the dismissal was not arbitrary or irrational.[12] Our conclusions here

---

[12] Because we have not been provided with a full copy of the "fair summary of the facts" upon which the dismissal was based, we cannot determine, in this case, whether it would be more efficient to review the record ourselves instead of remanding to the board. See, e.g., *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.,* 371 Mass. 67, 72 (1976).

are, of course, not material to Palumbo's pending appeal to the Superior Court under G. L. c. 71, § 43A. See note 9, *supra*.

The judgment of the Superior Court is reversed and the case is remanded to the board for further proceedings in conformity with this opinion.

*So ordered.*