TOWN OF GEORGETOWN *vs.* ESSEX COUNTY RETIREMENT
BOARD & another.[1]

No. 89-P-1359.

Essex. February 12, 1990. - September 24, 1990.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Police*, Discharge. *County*, Retirement board. *Municipal Corporations*,
Selectmen, Police. *Administrative Law*, Substantial evidence. *Quasi Ju-
dicial Tribunal*.

Discussion of the scope of a retirement board's review of public employee
discharges under G. L. c. 32, § 16 (2). [273-275]
A county retirement board, reviewing pursuant to G. L. c. 32, § 16 (2), the
discharge of a town police officer, could not properly conclude that the
discharge was unjustified by the findings made by the town's board of
selectmen after an evidentiary hearing. [275-277]
A town police officer's lawsuit against two of the three members of the
town's board of selectmen did not disqualify those selectmen from vot-
ing on the decision to discharge the officer, where disqualification, if
mandated, would have left the board powerless to act on the matter.
[277-278]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 20, 1989.

The case was heard by *John T. Ronan*, J., on a motion for
summary judgment.

*Richard J. Fallon* for the plaintiff.

*John F. Tierney* for Gretchen Wilmarth.

ARMSTRONG, J. Gretchen Wilmarth, a Georgetown police
officer, was discharged by the selectmen based on findings,
after hearing, of misconduct, not in the course of her work as
a police officer, but nevertheless in violation of police depart-
ment regulations proscribing conduct unbecoming an officer
and mandating that her conduct should "be above reproach

---

[1]Gretchen Wilmarth.

in all matters both within and outside the [d]epartment" and that she should be truthful "in all reports as well as when [she] appears before any judicial . . . proceeding." Based, apparently, on her longevity in office (the point is not contested), she was entitled to review of the discharge by the Essex County retirement board under G. L. c. 32, § 16(2), to which the town duly forwarded a record of its proceedings. The record included a transcript of the hearing before the board of selectmen, the exhibits introduced, and the findings of the selectmen (originally stated orally at the close of the hearing, then recapitulated in a letter to the retirement board, by the police chief, writing for the selectmen). The retirement board, after a nonevidentiary (so far as appears) hearing, reviewed the record of proceedings before the selectmen and found, without amplification, that the removal of Gretchen Wilmarth "was unjustified." The retirement board ordered that she be restored to her office without loss of compensation. The town, having no right of appeal to the District Court under § 16(3) or to the Contributory Retirement Appeal Board under § 16(4), see *Barrett* v. *Police Commr. of Boston*, 347 Mass. 298, 300-301 (1964), brought an action in the nature of certiorari (G. L. c. 249, § 4) in the Superior Court.[2]

The case was heard in the Superior Court on cross motions for summary judgment. The judge, reviewing the record of proceedings, allowed the motion of the retirement board, ruling that its decision was supported by substantial evidence. He ordered entry of a judgment affirming the retirement board's decision and ordering reinstatement of Wilmarth with no loss of benefits or compensation. The town appealed.

Although the judge took some pains to state the standard of review that he applied, he did not identify the evidence that he regarded as offering substantial support for the decision of the retirement board. This would probably have been

[2]No right of judicial review lay under G. L. c. 30A, § 14, because a county retirement board is not an "agency" as defined in G. L. c. 30A, § 1(2). *Buteau* v. *Norfolk County Retirement Bd.*, 8 Mass. App. Ct. 391, 392 (1979).

a futile task, as the retirement board had not articulated the rationale for its decision. The "substantial evidence" test makes sense when it is applied to evaluate articulated subsidiary findings against the evidentiary record that was (or was asserted to be) the basis for them — a process that is normally the crux of judicial review of adjudicatory decisions under the State Administrative Procedure Act, G. L. c. 30A, §§ 11(8) and 14(7)(e). See *New York Cent. R.R.* v. *Department of Pub. Util.*, 347 Mass. 586, 593 (1964). Here the only factual findings that have been stated are those of the board of selectmen, and the pivotal question is the role that the retirement board should play under G. L. c. 32, § 16(2), in reviewing the decision of the selectmen.

The tenor of the few reported cases that have considered that point has been to curtail rather sharply the scope of the retirement board's review. In *Welch* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 502, 508 (1962), the court stated that review by a local retirement board under § 16(2) of the removal of a department head by the city manager "could not be a broad one. It would not be an examination 'de novo' of the propriety of the removal." Contrasting a review of a removal for specified causes, the court stated, "It is hard to see how any review under c. 32, § 16(2), of a removal at pleasure . . . could result in a reinstatement unless, perhaps, the local board could determine that the city manager's reasons, if any, stated for removal were nothing more than a gross subterfuge." *Ibid.* The court was even more pointed in *School Comm. of Brockton* v. *Teachers' Retirement Bd.*, 393 Mass. 256 (1984), reversing a decision of a retirement board ordering, under § 16(2), reinstatement of a teacher discharged by the school committee for incompetence. Rejecting the view that § 16(2) was "intended to invest the board with plenary powers to review and reverse the personnel decisions of local school committees," *id.* at 261, or that it authorized "the board to engage in its own fact-finding process," *id.* at 263, the *School Comm. of Brockton* decision defined the issue before the retirement board as "whether, upon a review of the 'fair summary of the facts'

presented by the committee, the dismissal is justified. . . . In this context, we conclude that a dismissal is 'justified' if it is based on 'any ground which is not arbitrary, irrational, unreasonable, in bad faith, or irrelevant to the committee's task of running a sound school system.' " *Id.* at 263, 264, quoting from *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 308 (1981).

In defining the scope of review, the *Welch* decision emphasized the strong municipal interest in cooperation between a city manager and his department heads, and the *School Comm. of Brockton* decision emphasized the preeminent role of the school committee in defining educational policy and standards. No less compelling, however, is the interest of a municipality in ridding itself of police officers found by it to be lacking in personal integrity.

We assume, for purposes of decision, that a retirement board under § 16(2) could find arbitrary and unreasonable a removal based on findings that manifestly lack support in the appointing authority's evidentiary record. Such was not the case here. The selectmen's finding that Gretchen Wilmarth "misappropriated" ticket money at the drive-in theater where she worked as ticket-taker was supported by the eyewitness accounts of four fellow police officers, who, when assigned to the theater as special detail officers,[3] observed her to be undercounting patrons regularly in the records she kept of ticket sales, despite charging those patrons. The selectmen could properly regard that testimony to be more probative than the testimony of DeSantis, the theater's operator, in support of Wilmarth, because he would have no way of knowing that cash receipts were short if they tallied with the allegedly false records prepared by Wilmarth.[4] The finding

---

[3]The evidence suggested that assignments to this detail may have been controlled indirectly by Wilmarth, who was thereby in a position to affect substantially the weekly incomes of her fellow officers.

[4]DeSantis testified that he did some car checks that did not disclose undercounting, but the two methods of checking could properly be found ineffective. The "live check" called for a person to oversee the ticket-taker, who would know he or she was being watched. The "blind check," whereby a checker would attempt to count customers in cars by walking

that Wilmarth failed to report her cash income from the drive-in theater on her Federal tax returns for 1981 through 1986 was not contested. Her defense, essentially, was that it was unintentional and that she had filed amended returns in 1988 reporting the cash income without repercussions from the Internal Revenue Service. The selectmen could properly find the omissions to have been deliberate, especially in light of the fact that the amended returns were filed three days after it came to light through subpoenas in a related case (see note 5, *infra*) that the theater operator had kept records for those years showing her authorized cash income.

The finding that Gretchen Wilmarth had given misleading and false testimony under oath was also supported by the evidence. The testimony in question appeared in depositions taken in an action pending in the Superior Court for Essex County.[5] The action was brought by Wilmarth and her husband seeking damages against the town and two of the selectmen for ordering Wilmarth to give up her employment at the drive-in theater and removing her husband, Paul, as a member of the Georgetown board of health.

Gretchen Wilmarth testified in the depositions that Paul was disabled and did only occasional or incidental work for Environmental Engineering Corporation. On the evidence the selectmen could properly find that Paul was not disabled from working, that he worked in fact on percolation tests and on designing and approving septic systems both in Georgetown and in Rowley, and that he served as the health agent for Rowley. They could further draw the inferences that the corporation was created as a vehicle for concealing Paul's income from the Social Security Administration so as to preserve his disability benefits, and that Gretchen Wil-

---

through the darkened theater lot, was subject to error because of limited visibility and because of customers going to the rest rooms and concession stands. DeSantis arranged for a more detailed investigation in 1986, but this was at a point after accusations had surfaced.

[5]Paul Wilmarth and Gretchen Wilmarth *vs.* Town of Georgetown, Alan Aulson, and Paul Thompson, Civ. No. 86-2162 (Super. Ct. Essex Co.). A partial judgment adverse to the Wilmarths was recently affirmed in *Wilmarth* v. *Georgetown*, 28 Mass. App. Ct. 697 (1990).

marth, as the person who controlled the corporation and kept the corporate and family financial records, was fully aware of the extent of Paul's work and deliberately misrepresented both it, and her knowledge of it, in the depositions.

The retirement board could not properly conclude that the removal was not justified by the findings of the board of selectmen. Doubtless many minor transgressions in private life could rightly be thought of such little relevance to the public duties of a police officer as not reasonably to justify dismissal. The offenses found in this case are not of that character; they go to basic honesty. Any doubt on this score would be resolved by the Georgetown police regulations, one of which states:

> "Effective and efficient performance of his duty requires that a police officer maintain the respect and cooperation of his community. This requirement dictates that the conduct of all police officers be above reproach in all matters both within and outside the Department."

We have considered, finally, whether the decision of the retirement board could find its justification in Wilmarth's contention that the two members of the board of selectmen were biased and they should have disqualified themselves from sitting at the hearing and voting on the removal decision. The contention is based on the Wilmarths' lawsuit still pending in the Superior Court (see note 5, *supra*), in which the two selectmen are named as defendants, both in their personal and official capacities.

Georgetown's board of selectmen consists of three members. The disqualifications demanded by Wilmarth would have deprived the board of a quorum, leaving it powerless to act. If the pending lawsuit should be thought a mandatory ground for disqualification in normal circumstances, the rule of necessity would preclude application of that principle here. *Moran* v. *School Comm. of Littleton*, 317 Mass. 591, 593-594 (1945). *Mayor of Everett* v. *Superior Ct.*, 324 Mass. 144, 150-151 (1949). "An executive officer or an administrative board upon whom alone the power of removal has been

conferred is not prevented by reason of bias or prejudice from removing anyone whose conduct has merited his severance from the public service." *Id.* at 151. "The general rule is that a member of an administrative board who is biased or prejudiced against one on trial before the board is not required to withdraw from the hearing if no other board can hear and determine the matter, especially if his withdrawal would deprive the board of the number of members required to take a valid affirmative vote." *Moran* v. *School Comm. of Littleton, supra* at 593. See generally Cella, Administrative Law and Practice § 321 (1986).

It is doubtful that the pending lawsuit would mandate disqualification apart from that rule. It is evident from the allegations of the complaint therein, of which we have taken notice, that its allegations arise not from private disputes but from the actions of the two selectmen in connection with removing Paul Wilmarth from the board of health and terminating Gretchen Wilmarth's involvement with the drive-in theater. The fact that the complaint is festooned with allegations of defamation, discrimination, malice, and the like and seeks money damages against the selectmen as individuals is, in our view, not determinative. A person having business before a governmental board cannot be allowed to purge particular members by the expedient of bringing a lawsuit against them. It is not suggested that the two selectmen in question had any private financial or other interest in the removal of Gretchen Wilmarth as a police officer.

The judgment is reversed. A new judgment is to be entered declaring that the decision of the retirement board was in excess of its authority and is a nullity.

*So ordered.*